[Civ. No. 8427. Second Appellate District, Division Two.—November 22, 1932.]

NORMAN WARREN WOODWORTH, a Minor, etc., Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, GRATIA FISHING BARGE COMPANY (a Corporation) et al., Respondents.

Chester A. Staley and C. C. Caswell for Petitioner.

A. I. Townsend and Everett A. Corten for Respondents.

CRAIG, J.—An application filed by the petitioner herein, a minor, by his guardian *ad litem,* with the Industrial Accident Commission, claiming compensation for injuries alleged to have been sustained while employed upon an improvised craft which loaded and unloaded passengers and fishing supplies to and from a launch which plied between said craft and an anchored pleasure boat, was rejected by the said Commission upon the ground that it was without jurisdiction of the cause. The petitioner thereupon filed an application for review of such decision.

It appeared that the respondent corporation and said William F. Storey maintained at a distance of about two and one-eighth miles from the shore of the Pacific Ocean a fishing barge, which was anchored, and to which the public were invited. Certain charges were made for the privileges of said barge, which included transportation thereto and return. Patrons were carried to the barge from a point about six hundred feet from the shore by a small launch. Between the points last mentioned said respondents placed a steel cable to which, the parties have stipulated, "was engaged a float approximately twenty feet square, constructed of empty drums or tanks bound together, upon which timbers were placed and likewise bound together, above and upon which was constructed a small deck with a room and seats for passengers and space for gasoline engine". At the time of said injury the petitioner was operating such structure in carrying passengers thereon toward shore. The respondent Commission held, and it is here insisted, that "one employed under a maritime contract to serve

as the sole member of the crew of a vessel and who sustained injury by contact with the machinery then being used to propel such craft, while transporting passengers for hire upon the navigable waters of the United States during a landward journey from an ocean-going craft to the shore, was engaged in activity so closely related to navigation and commerce as to be subject to the exclusive admiralty jurisdiction''. In support of its contention are cited article III, section 2, of the Constitution of the United States (Const., pt. 2, p. 284, U. S. C. A.) : ''The judicial power shall extend to all cases . . . of admiralty and maritime jurisdiction''; and section 24 of the Judicial Code (28 U. S. C. A., p. 32) : ''The district courts shall have original jurisdiction as follows: . . . Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, . . . ''

The maritime law has been held to have been instituted for the protection of seamen and to afford them the right to recover for maintenance, cure, and wages during disability when injured in service of their ship. (*Pacific S. S. Co.* v. *Peterson,* 278 U. S. 130 [49 Sup. Ct. Rep. 75, 73 L. Ed. 220] ; *Morris* v. *United States,* 3 Fed. (2d) 588; *The Mars,* 149 Fed. 729 [79 C. C. A. 435].) By an act of Congress any seaman may also, ''at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . . Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.'' (38 Stat. 1185; amended, 41 Stats. 1007; 46 U. S. C. A., sec. 688.) In construction of the chapter embracing the foregoing and other provisions regulating employees and the system of their employment in maritime merchant commerce, ''every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a 'seaman'; and the term 'vessel' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river, to which the provisions of this chapter may be applicable, . . . '' (U. S. Comp. Stats., sec.

8392; 38 Stat. 1168, sec. 10; 46 U. S. C. A. 713.) But a "seaman" is one who by contractual arrangement serves the vessel in navigation. (*Martis* v. *Union Transp. Co.*, 207 App. Div. 381 [202 N. Y. Supp. 56].) "Seamen" are persons employed in a vessel to assist in the main purpose of the voyage. (*The ZR-3*, 18 Fed. (2d) 122.) Said chapter requires that the master of every vessel shall "make an agreement in writing or in print, with every seaman whom he carries to sea as one of the crew", and strict penalties are exacted for nonobservance thereof. (46 U. S. C. A., secs. 561–575.)

We do not feel authorized to hold that the maritime law nor congressional legislation contemplated for the employment and protection of those engaged in merchant commerce were intended to be so comprehensive as to include one who labored only on shore and upon a pontoon or float attached thereto. The record fails to bring the petitioner within the definition of respondents as "one employed under a maritime contract to serve as the sole member of a crew of a vessel . . . transporting passengers . . . from an ocean-going craft", nor to suggest that any of the conditions of the maritime law or Seamen's Act were fulfilled or required of either party to the employment mentioned. (*Sultan Railway & Timber Co.* v. *Department of Labor & Ind.*, 277 U. S. 135 [48 Sup. Ct. Rep. 505, 72 L. Ed. 820].)

The order is reversed.

Works, P. J., and Stephens, J., *pro tem.*, concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 20, 1933.