Argued June 24; affirmed September 22, 1936

# MARTINSON *v.* STATE INDUSTRIAL ACCI-
# DENT COMMISSION

(60 P. (2d) 972)

*William P. Lord*, of Portland (T. Walter Gillard, of Portland, on the brief), for appellant.

*Victor R. Griggs*, Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for respondent.

BAILEY, J. The plaintiff, Bud Martinson, was hired on February 20, 1934, by Meyers Contract Company to assist in loading machinery on a barge moored to a wharf on the Willamette river in Portland, Oregon. That company was engaged in general contracting business and had rented from the Diesel Towing Company the barge in question to transport its machinery and equipment from Portland to the Bonneville dam on the Columbia river, and engaged the Diesel Towing Company to tow the barge to the dam site. The barge, of approximately one hundred tons capacity, had prior to that time been used by the Diesel Towing Company principally to transport lumber and machinery on the Willamette river and the upper and lower Columbia.

Prior to his employment by Meyers Contract Company the plaintiff had at different times been employed by the Diesel Towing Company to assist in loading and unloading cargoes from the barge. The only work to be performed by him for Meyers Contract Company was to assist in loading that company's equipment on the barge. He had been working on the barge about an hour and a half when a welding tank "slipped down off a sling" used for loading it and crushed two toes of Martinson's left foot.

After the injury the plaintiff applied to the state industrial accident commission for compensation under the Oregon workmen's compensation law. After paying him one month's compensation the commission denied further compensation, on the ground that the work in which the plaintiff was engaged at the time of the injury was maritime in nature and not covered by the state compensation act. Thereupon this proceeding was instituted against the commission. At the conclusion of the trial the circuit court entered judgment for the defendant, from which judgment the plaintiff has appealed.

The principal question involved on this appeal is whether or not the nature of the work in which plaintiff was engaged and the place of his employment at the time of the injury preclude recovery by him under the Oregon compensation act. It is admitted that the plaintiff and his employer, Meyers Contract Company, at the time of the injury were subject to that act as far as the provisions thereof could apply.

From the record in the case it appears that the barge prior to the loading of the machinery had been engaged exclusively in commerce on the navigable waters of the United States and at the time of the injury complained of was on navigable water, and the cargo which was being loaded upon it was to be carried for a considerable distance on navigable waters.

■ The fact that the craft which was being loaded was a barge and not a ship does not alter the maritime nature of the work in which plaintiff was engaged. As was said in *Nogueira v. New York, N. H. & H. R. Co.*, 281 U. S. 128 (74 L. Ed. 754, 50 S. Ct. 303):

"From the standpoint of maritime employment, it obviously makes no difference whether the freight is placed in the hold or on the deck of a vessel, or whether

the vessel is a car float or a steamship. A car float in navigable waters is subject to the maritime law, like any other vessel.''

■ The loading of a barge or a ship has direct relation to commerce and navigation, is not a matter of purely local concern, and uniform rules in respect thereto are essential. So far as concerns the nature of the work to be performed, the loading of a vessel has as direct relation to commerce and navigation as the unloading. In *Northern Coal & Dock Company v. Strand*, 278 U. S. 142 (73 L. Ed. 232, 49 S. Ct. 88) it is observed:

''The unloading of a ship is not matter of purely local concern. It has direct relation to commerce and navigation, and uniform rules in respect thereto are essential. The fact that Strand worked for the major portion of the time upon land is unimportant. He was upon the water in pursuit of his maritime duties when the accident occurred.''

In *Employers' Liability Assurance Corporation v. Cook*, 31 Fed. (2d) 497, an action was brought by the widow of Hal Cook, under the compensation law of Texas, to recover compensation for Cook's death. The Ford Motor Company owned two steamships, the Lake Gorian and the Oneida, which it operated between Detroit and various cities where it maintained assembling plants, including Houston, Texas. On one of the trips of the steamship Lake Gorian to Houston, while Cook, who was a mechanic in the Ford assembling plant at that place, was in the hold of the ship assisting in unloading, he received an injury which caused his death. The defense to recovery under the workmen's compensation law of Texas was that the asserted cause of action was within the exclusive jurisdiction of a court of admiralty. In the federal district court the widow recovered judgment. The circuit court of appeals af-

firmed the judgment, using the same line of reasoning here advanced by the appellant for a reversal of the ruling of the trial court. We therefore quote at length from its opinion, as this will serve a double purpose, *i. e.*, to explain appellant's position and to set forth the conclusions which later were refuted by the supreme court of the United States:

"The injury to the employee in the case at bar was not caused by a tort; it was a pure accident. Appellee could obtain no relief in admiralty, and has none, unless it be under the Texas workmen's compensation law. We are of opinion that the state statute applies under the peculiar facts of this case. As in the Rohde case [257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008] the employee and employer did not contract in contemplation of the maritime law. The employee's work was to be done upon land. It was only because he was directed to do so that he ever went aboard the ship. It would be extreme to say that he was a longshoreman or stevedore, or is to be classed as a seaman, within the meaning of section 20 of the Merchants' Marine Act of 1920 (46 USCA § 688), as construed by the supreme court in International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157. The work he did in unloading the Lake Gorian on her two trips to Houston was so infrequent, and occupied so small a part of his time, as to be merely incidental to his regular employment. The Ford Motor Company owned but two ships, which it did not use in commerce, except to carry its own goods.

"The employees were not engaged to unload cargo generally, but only to take their employer's cargo off their employer's ship. We think it fairly can be said that the matter of unloading these two ships of the Ford Motor Company at rare intervals was 'of mere local concern, and its regulation by the state will work no material prejudice to any . . . feature of the general maritime law.' Millers' Underwriters v. Braud, *supra*. It is true that in Northern Coal Co. v. Strand,

278 U. S. 142, 49 S. Ct. 88, 73 L. Ed. 232, it was said that the unloading of a ship was not a matter of purely local concern. But the language used in any opinion is to be construed in the light of the facts under consideration. In the just-cited case the employees were engaged to work regularly, both upon the dock of their employer and upon ships which came to that dock to be unloaded. The contract of employment contemplated that the employees should unload the ships as well as handle coal on the dock.''

On appeal of the Cook case to the supreme court, 281 U. S. 233 (74 L. Ed. 823, 50 S. Ct. 308), the latter tribunal reversed the circuit court of appeals and rejected its reasoning, in the following language:

''The record plainly discloses that while in the course of his employment and at work in the hold assisting in unloading a vessel afloat on navigable waters Cook received injuries out of which this suit arose. There is nothing in principle to differentiate this case from Northern Coal Company v. Strand, 278 U. S. 142, and the judgment of the circuit court of appeals must be reversed.

''See Nogueira v. New York, N. H. & H. R. R. Co., decided this day, *ante*, p. 128.

''The proceeding to recover under the State Compensation Act necessarily admitted that the decedent was employed by the insured when injured. Any right of recovery against the insurance carrier depends upon the liability of the assured. Whether Cook's employment contemplated that he should work regularly in unloading vessels or only when specially directed so to do is not important. The unloading of a ship is not matter of purely local concern as we have often pointed out. Under the circumstances disclosed the state lacked power to prescribe the rights and liabilities of the parties growing out of the accident. The fact that the compensation law of the state was elective in form does not aid the respondents.''

See, also, in this connection: *Gonsalves v. Morse Dry Dock and Repair Company*, 266 U. S. 171 (69 L. Ed. 228, 45 S. Ct. 39); *Baizley Iron Works v. Span*, 281 U. 222 (74 L. Ed. 819, 50 S. Ct. 306); *Spencer Kellogg & Sons, Inc. v. Hicks*, 285 U. S. 502, at page 513 (76 L. Ed. 903, 52 S. Ct. 450); *Puget Sound Bridge & Dredging Co. v. Department of Labor and Industries*, 185 Wash. 349 (54 P. (2d) 1003); *Tyler v. Industrial Commission*, 25 Ohio App. 444 (158 N. E. 586); *Ciaramitaro's Case*, 288 Mass. 448 (193 N. E. 4); *Comar v. Department of Labor and Industries*, — Wash. — (59 P. (2d) 113).

In *The Observation*, 1 A. M. C. (1936), page 6 [same case, *Heaney v. Carlin Construction Company*, 269 N. Y. 93 (199 N. E. 16)], the court, in referring to the nature of Heaney's employment, said:

"The contract of employment was for the services of the claimant in the erection of a building. It was not a contract to do work upon a vessel in navigable waters, nor even to do work remotely connected with any undertaking having to do with navigation or commerce. The presence of the claimant upon the boat was a mere incident of the contract of employment, it having been found as a fact that he was on the boat as an employee of the contractor against whom the award has been made."

The opinion in the case just mentioned represented the decision of a court divided four to three, the majority holding that the injured employee was entitled to compensation under the workmen's compensation law of New York. The facts in that case are, as above pointed out, entirely different from those in the case at bar, in that the case before us for decision has to do with an employee engaged in helping load a barge upon navigable waters, whereas in the Heaney case the employee was on the boat merely for transporta-

tion to perform labor elsewhere for his employers, when the explosion which caused his injuries occurred.

Inasmuch as the supreme court of the United States, whose decisions in matters of this nature are controlling, has decided the question here involved adversely to appellant's contention, it follows that the judgment appealed from should be affirmed, and it is so ordered.

RAND and KELLY, JJ., concur.

---

BEAN, J. (dissenting). The Meyers Contract Company had a contract to do certain work on the Bonneville dam. On February 20, 1934, it arranged to transport its construction equipment and supplies, with which to commence construction, from the Willamette Iron & Steel Works dock in Portland to the dam. The machinery was loaded on a barge by means of a heavy lift located on the dock. The barge, estimated at about one hundred tons, had been leased by the contractor. It had no relation to the motor boat, or whatever power towed it. Plaintiff Martinson was a laborer and not a longshoreman nor a seaman, who was employed temporarily to load machinery and equipment on the barge. As the equipment was hoisted from the dock Martinson would assist in loading it on the barge. His duties required his presence on the dock and on the barge. While he was standing on the barge a welding tank fell on his left foot, causing him disabling injuries.

Martinson's contract of employment was not maritime in its nature; he was not engaged in doing anything that materially assisted in or affected navigation, or in any way connected with commerce, except incidentally, if at all. His claim involves a contract matter

and is not one sounding in tort. Both employer and employee were subject to the provisions of the Workmen's Compensation Act of Oregon.

Martinson filed a claim under the Workmen's Compensation Act, §§ 49-1801, et seq., Oregon Code 1930. Compensation was awarded and paid him for one month, after which the commission rescinded its order for the reason that it held the work was maritime in character and not subject to the Workmen's Compensation Act, and that the employee's claim fell under the Longshoremen's and Harbor Workers' Compensation Act. An appeal was taken to the circuit court and that court sustained the commission's ruling. Plaintiff appealed to this court.

The main question for determination is whether the plaintiff Martinson is entitled to compensation under the Workmen's Compensation Act of Oregon or whether the case is governed by the maritime law.

The question whether the case involves a contract matter or a tort is an important one. "The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled.": *Grant Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469, 476 (66 L. Ed. 321, 42 S. Ct. 157, 25 A. L. R. 1008).

The first Congress, in the original Judiciary Act (Act of September 24, 1789, chap. 20, § 9, 1 Stat. at L. 73, 77) conferred upon the Federal district courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, * * * saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." The savings clause has been preserved in subsequent

revisions: Rev. Stat. § 563 (8), Judicial Code, § 24 (3), 36 Stat. at L. 1087, 1091, chap. 231, 28 U. S. C. A. § 41 (3). There is but little difference between the common law and statute law. Indeed, many statutes are engrafted into the common law.

In *Grant Smith-Porter Ship Co. v. Rohde,* supra, at page 473, we find the following:

"Libelant, Herman F. Rohde, received injury while at work on partially completed vessel lying at a dock in the Willamette River forming a part of the shipbuilding plant of respondent, Grant Smith-Porter Ship Company. The character of the work being done by libelant and the operations of respondent of which the work formed a part are as follows: Respondent, Grant Smith-Porter Ship Company, at and prior to the time of libelant's injury was engaged in constructing steam vessels for the United States government under contract with United States Shipping Board Emergency Fleet Corporation. One of these steam vessels was the steamer 'Ahala'. Prior to the time of libelant's injury this steamer had been launched in the Willamette River at Portland, Oregon, which river is a part of the navigable waters of the United States. At the time of libelant's injury, April 10, 1919, the vessel had been substantially completed, but was not ready for delivery and all of the work in process at the time of libelant's injury was work pertaining to the construction of the vessel by respondent, Grant Smith-Porter Ship Company. Libelant's work was that of a carpenter or joiner and at the time of the injury he was at work constructing a bulk head enclosing certain tanks in the vessel."

At page 476 of the same report, the court stated:

"And as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund it can not properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. Union Fish Co. v. Erickson, 248 U. S. 308. Under such circumstances

regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony of uniformity of that law in its international or interstate relations. Southern Pacific Co. v. Jensen, 244 U. S. 205; Western Fuel Co. v. Garcia, ante, 233.''

As indicated, there is no tort suggested as being involved in this proceeding. Martinson's contract of employment, in theory, is that the statute, giving the commission power to make an award, is read into and becomes a part of the contract. By virtue of the statute the contract of employment contains an implied provision that if the employee is injured by accident arising out of and in the course of his employment, caused by violent or external means, he will be paid compensation, as provided by the Workmen's Compensation Act, or, if death ensues a certain sum will be paid his dependents. It is immaterial whether the employer was wrong or negligent in any of his acts. Payments of compensation are made irrespective of such condition.

The work of construction of the Bonneville dam was not mentioned as having any influence upon the matter whatever, and we fail to see how it is possible that the loading of some equipment to be carried to the Bonneville dam could in any way be said to be maritime in its nature. The employment may pertain very remotely to the improvement of navigation of the Columbia river, but such employment would not be maritime in its nature any more than the construction of a vessel to be navigated upon navigable waters would necessarily be maritime.

Plaintiff's injuries are compensable under the Oregon Workmen's Compensation Act by virtue of the fact

that his employment pertained to local matters, having only remote incidental relation to navigation and commerce. Neither of these would be affected in any way any more than if the equipment had been transported from Portland to the Bonneville dam by truck: *Grant Smith-Porter Ship Co. v. Rohde,* supra; *Sultan Ry. Co. v. Dept. of Labor,* 277 U. S. 135 (72 L. Ed. 820, 48 S. Ct. 505); *Dewey Fish Co. v. Dept. of Labor and Industries,* 181 Wash. 95 (41 P. (2d) 1099; *Woodworth v. Ind Acc. Com.,* 127 Cal. App. 625 (16 P. (2d) 302; *Mark v. Portland Gravel Co.,* 130 Or. 11 (278 P. 986); *North Pacific S. S. Co. v. Ind. Acc. Com.,* 174 Cal. 346 (163 P. 199).

The Meyers Contract Company was not engaged in shipping by water as a common carrier. Martinson was engaged rather temporarily to do this work. He had nothing whatever to do with regular navigation or commerce.

The federal act, known as the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A. 1935 Pocket Part, § 903, among other things, provides:

"Coverage. (a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—"

And the provisions which follow, concededly not applying to this case, are:

"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or

"(2) An officer or employee of the United States

or any agency thereof or of any State or foreign government, or of any political subdivision thereof.

"(b) No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another."

In the notes to this section we find reference to the well-settled rule in regard to an employee engaged on navigable waters in completion of a new ship launched but not finished, where it is held that, the work not being "maritime", the state has power to provide compensation therefor: *U. S. Casualty Co. v. Taylor*, 64 Fed. (2d) 521, modifying *Taylor v. Lawson*, 60 Fed. (2d) 165, certiorari denied *Taylor v. United States Casualty Co.*, 290 U. S. 639 (54 S. Ct. 56, 78 L. Ed. 555). Also in the notes to this section, we find the following:

"In this section providing compensation is payable if recovery may not 'validly be provided by state law', quoted phrase refers to authority of state to act, not to inquiry whether state has exercised power. U. S. Casualty Co. v. Taylor (C.C.A. S.C. 1933) 64 F. (2d) 521, mod. (D. C. 1932) 60 F. (2d) 165."

Under the Longshoremen's and Harbor Workers' Compensation Act, as applied to this case, if recovery for the disability through workmen's compensation proceedings may validly be provided by state law, then the plaintiff is entitled to compensation under the Workmen's Compensation Act of Oregon; otherwise not. As declared by Mr. Justice Belt in *Mark v. Portland Gravel Co.*, supra, at page 14, after referring to the opinion by Chief Justice Taft in the case of *London Guarantee & Accident Co. v. Industrial Accident Commission*, 279 U. S. 109 (73 L. Ed. 632, 49 S. Ct. 296), and other cases, there are two general classes of cases, one wherein the matters considered were not of mere local

concern, but, because of their special relation to commerce and navigation, were beyond the regulatory power of the state, as in *Great Lakes Dredge & Dock Co. v. Kierejewski,* 261 U. S. 479 (67 L. Ed. 756, 43 S. Ct. 418); *Gonsalves v. Morse Dry Dock & Repair Co.,* 266 U. S. 171 (69 L. Ed. 228, 45 S. Ct. 39); *Robins Dry Dock & Repair Co. v. Dahl,* 266 U. S. 449 (69 L. Ed. 372, 45 S. Ct. 157). The other class of cases is where the facts disclosed that the party injured was not engaged in any work so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law: *Millers' Indemnity Underwriters v. Braud,* 270 U. S. 59 (70 L. Ed. 470, 46 S. Ct. 194); *Grant Smith-Porter Ship Co. v. Rohde,* supra; *Alaska Packer's Assn. v. Ind. Acc. Com.,* 276 U. S. 467 (72 L. Ed. 656, 48 S. Ct. 346); *Sultan Ry. Co. v. Dept. of Labor,* supra.

We learn from the opinion in *Woods v. Merrill-Stevens Dry Dock & Repair Co.,* 14 F. Supp. 208, that what work has direct relation to navigation or commerce must be determined with reference to the surrounding circumstances of each case, as respects whether the cause of action for injury sustained in such work is within the exclusive provisions of the state compensation act. Where employment pertains to local matters, having only incidental or indirect relation to commerce and navigation, the regulation of the relation of employer and employee works no prejudice to the general laws of navigation and commerce and the state can prescribe the exclusive remedy to compensate such employees for injury sustained in such employment. It was held that the Florida workmen's compensation law, and not the seamen's act, was applicable in an action for the death of a member of the crew on a dredge

engaged in maintaining proper depth of water in privately operated "slips" in the navigable Florida waters where commercial vessels were dry-docked and repaired, since the relation of the work of the dredge to commerce and navigation was merely incidental and indirect. See also *Observation,* 1 A. M. C. (1936), p. 6.

Employment on a navigable river in assembling saw logs in booms for towage elsewhere for sale, the breaking up of the booms which have been towed on such a river to a sawmill and the guiding of the logs to a conveyor extending into the river and by which they are drawn into the mill for sawing, is employment of a local character, having only an incidental relation to navigation and commerce, and the rights and obligations of the employees and their employers arising from injuries suffered by the former may be regulated by a local compensation law. Where the employment, although maritime in character, pertains to local matters having only an incidental relation to navigation and commerce, the rights, obligations and liabilities of the parties, as between themselves, may be regulated by local law which does not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity: *Sultan Ry. v. Dept. of Labor,* supra; *Grant Smith-Porter Ship Co. v. Rohde,* supra; *Dewey Fish Co. v. Dept. of Labor,* supra.

In *Woodworth v. Ind. Acc. Com.,* supra, injury was claimed to have been sustained while the workman was employed on a craft which loaded and unloaded passengers and fishing supplies to and from the launch which plied between the craft and an anchored pleasure boat. A fishing barge was maintained at a distance of about two and one-eighth miles from the shore of the Pacific ocean where it was anchored, and the public

was invited to it. At the time of the injury the claimant was operating the structure in carrying passengers thereon toward shore. The commission held:

"one employed under a maritime contract to serve as the sole member of the crew of a vessel and who sustained injury by contact with the machinery then being used to propel such craft, while transporting passengers for hire upon the navigable waters of the United States during a landward journey from an ocean-going craft to the shore, was engaged in activity so closely related to navigation and commerce as to be subject to the exclusive admiralty jurisdiction."

The court, in reversing the commission's ruling, said:

"We do not feel authorized to hold that the maritime law nor congressional legislation contemplated for the employment and protection of those engaged in merchant commerce were intended to be so comprehensive as to include one who labored only on shore and upon a pontoon or float attached thereto. The record fails to bring the petitioner within the definition of respondents as 'one employed under a maritime contract to serve as the sole member of a crew of a vessel * * * transporting passengers * * * from an ocean-going craft,' nor to suggest that any of the conditions of the maritime law or Seamen's Act were fulfilled or required of either party to the employment mentioned." Citing cases.

Hearing was denied by the supreme court.

In the case of *The Observation*, supra, at page 7, an opinion by the Court of Appeals of the state of New York, November 19, 1935, there is a quotation from *State Industrial Commission v. Nordenholt Corporation*, 259 U. S. 263, 271 (42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013), as follows:

"An award under the Workmen's Compensation Law is not made on the theory that a tort has been

committed; on the contrary, it is upon the theory that the statute giving the commission power to make an award is read into and becomes a part of the contract. * * * The contract of employment, by virtue of the statute, contains an implied provision that the employer, if the employee be injured, will pay to him a certain sum to compensate for the injuries sustained, or, if death results, a certain sum to dependents. These payments are made irrespective of whether or not the employer was guilty of wrong-doing. It is a part of the compensation agreed to be paid for services rendered in the course of the employment, * * *''

In *The Observation* case, at page 9, we also find the further quotation from *La Casse v. Great Lakes Engineering Works*, 242 Mich 454 (219 N. W. 730), where the court said:

"3. If an injury occurs on navigable waters and in the performance of a maritime contract, it is certainly within the exclusive jurisdiction of admiralty unless (a) the contract is of merely local concern and (b) its performance has no direct effect upon navigation or commerce, and (c) the application of the state law 'would not necessarily work material prejudice to any characteristic feature of the General Maritime Law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations'.

"4. State workmen's compensation laws, contractual in character, are applicable to maritime service on navigable waters when, and only when, the service is within the exceptions (a), (b) and (c) above.

"5. If, however, the injury occurs on navigable waters, but in the performance of a non-maritime contract, it is at least prima facie local and within the operation of state laws. If there are any exceptions to this rule they are yet to be developed."

We are taught by *The Observation* case that if the act were for wages due under the contract of employment the federal court would not have jurisdiction.

Jurisdiction is not conferred upon that court because another part of the agreed compensation is sought to be recovered, namely, the compensation for the injury which was provided for by the contract, into which was read the compensation law.

The case in hand, we think, comes within each of the exceptions (a), (b) and (c) above quoted; that is, (a) the contract is of merely local concern, and (b) its performance has no direct effect upon navigation or commerce, and (c) the application of the state law would not necessarily work material prejudice to any characteristic feature of the General Maritime Law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations.

Martinson was picked up to help load some equipment on a barge to be towed for a short distance on navigable waters. His work had little, if anything, to do with navigation or commerce. The contract of employment was not a maritime contract. The whole transaction,—the contract and character of the work done and to be done,—was local in its nature. It is appropriate for the State Industrial Accident Commission to assume jurisdiction and award compensation for plaintiff's injury. We believe that compensation may be validly provided by state law. This does not infringe on the maritime law or disturb its uniformity, and does not interfere in any way with navigation or commerce, and is in consonance with the several federal opinions which apply. The case falls squarely within the specific exception of section 3 of the Longshoremen's and Harbor Workers' Compensation Act, which provides "if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law".

We do not question the authorities cited by the learned attorney general, such as *Nogueira v. New York, New Haven & Hartford R. R. Co.*, 281 U. S. 128 (50 S. Ct. 303, 74 L. Ed. 754), but believe the authorities to which we have referred apply more particularly.

I am unable to concur in the majority opinion. The judgment of the lower court should be reversed.